United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 9, 2007**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

---

m 06-31044
Summary Calendar

---

KENNETH GAINES,

Plaintiff-Appellant,

VERSUS

ARMANDO ASARO AND THE CITY OF NEW ORLEANS,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
m 2:05-CV-707

---

Before SMITH, WIENER, and OWEN,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Kenneth Gaines sued Armando Asaro and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the City of New Orleans under 42 U.S.C. § 1983 and Louisiana Civil Code article 2315. The district court granted summary judgment for the defendants, and we affirm.

I.

In March 2004, Gaines entered a grocery store to purchase cigarettes. He was followed by two masked men who ordered the employee behind the counter to "get down." Upon noticing the men, Gaines began moving slowly toward the exit. One of the men then shot and

killed the employee, and Gaines and both assailants quickly left the store. The incident was captured by a surveillance camera.

An enhanced version of the surveillance tape was played on the local news, and Gaines was recognized by a New Orleans Police Department ("NOPD") officer who also worked as a security officer at Gaines's place of employment. Homicide investigators showed the tape to Gaines's supervisor, who confirmed his identity. When Gaines arrived at work that evening, he agreed to go to the police station for questioning and was transported there by three officers.

Asaro, a NOPD officer, was designated the lead detective for the investigation of the murder. He took a statement from Gaines, who admitted that he was present at the shooting but denied involvement in the crime. When asked why he did not call police after witnessing the shooting, Gaines said that he had no telephone but had planned to contact police after he arrived at work that evening. Asaro also took statements from two witnesses who had been outside the store at the time of the crime. Gaines was arrested on suspicion of having participated in the murder and was incarcerated for two weeks, at which time a judge found no probable cause for his arrest and ordered him released.

This suit followed, with Gaines asserting that his arrest was made without probable cause in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution, and thus that Asaro and the city are liable under § 1983.[1] Gaines also claims defendants are liable under article 2315 because the actions of the officers constituted false arrest and battery.

The district court granted summary judgment, finding that the evidence available to Asaro "most definitely" supported the decision to arrest Gaines. That conclusion was based primarily on the surveillance tape and the fact that Gaines did not immediately report the shooting to police.

The court noted that the tape established that Gaines entered and exited the store nearly simultaneously with the assailants, who appeared to ignore him, did not give him any instructions, and walked right past him on their way to the counter. Gaines slowly backed up after the assailants reached the counter, and after the employee was shot, Gaines and both assailants quickly left the store. The court also found that, in light of the short time between the entry of Gaines and that of the assailants, it was highly likely that he had encountered them outside the store, and thus his decision to enter shortly before two masked men indicates his involvement in the crime.

## II.

"This Court reviews grants of summary judgment *de novo*, applying the same standard as the district court, viewing the evidence in a light most favorable to the non-movant." *Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 560 (5th Cir. 2003). Gaines claims that the court's characterization of the surveillance tape was incorrect, that it improperly considered, in its analysis of probable cause, Gaines's failure to report the crime immediately, and that it erred in finding that probable cause was not negated by Asaro's

---

[1] Before summary judgment was granted, Gaines dismissed his claims against Walls, (continued...)

[1](...continued)
McCleary, Ward, and Chiasson.

failure to ask certain questions during his interview of the witnesses.

After reviewing the tape, we agree with the district court's characterization of it. Gaines enters the store, and the masked men follow a few seconds later, before the door has swung completely shut. The assailants ignored Gaines, a potential witness to their crime; one of them even bumped into him while approaching the counter and did not react at all to the physical contact. Gaines slowly moved out of the way of the assailants and did not move quickly to leave the store until after the shot had been fired, at which time all three men exited simultaneously. As the district court found, "[t]o say the least, Gaines' actions, when viewed in connection with the actions of the other two men, are suspicious."

Gaines contends that it was improper for the district court to give weight, in the probable cause analysis, to the fact that he did not contact authorities. He bases this argument on his claim that individuals in high crime areas generally do not report crimes, and he supports the claim by noting that the other witnesses did not come forward voluntarily.

This does not, however, respond to the court's conclusion that Gaines was situated differently from the other witnesses because they were outside the store at the time of the murder, but Gaines was only a few feet from the assailants. It was not error for the court to consider, in the probable cause analysis, Gaines's refusal to contact police after he had been in such close proximity to the gunman at the time of the murder.

Gaines claims that even if the tape, and his failure to report the crime immediately, establish probable cause, that cause should be ne-

gated because Asaro did not adequately question the two witnesses about Gaines's involvement in the crime. Gaines cites cases from our sister circuits describing the general duty of law enforcement officers to conduct a reasonable investigation of the available evidence before making an arrest. We are not bound by the decisions of other circuits and, in any event, Asaro did not run afoul of them.

Gaines cites *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336 (7th Cir. 1985), in which the court reversed a grant of summary judgment because it found insufficient evidence of probable cause for an arrest. The plaintiffs were arrested and jailed overnight for failing to pay a restaurant bill that they claimed they had offered to pay. The only evidence was the accusation of the restaurant's owner, and other than collecting this self-serving accusation, the police conducted no investigation. Gaines also refers to *Kuehl v. Burtis*, 173 F.3d 646 (8th Cir. 1999), in which an officer arrested the plaintiff for assault after she pushed her way around a man who had been threatening her to reach a phone and call for help. After she touched the man, he had hit her in the head, knocking her eight feet through the air and causing marked bruising. The officer ignored the plaintiff's statements, her bruises, and several witness accounts before arresting her for assault.

By way of contrast, Asaro's investigation went beyond the interview of the two witnesses. He had a videotape of the crime showing Gaines acting suspiciously in close proximity to the murder and an admission from Gaines that he did not immediately report the crime. Asaro also questioned the two witnesses, one of whom described seeing Gaines. Though neither witness saw any communication between Gaines and the two assailants before or

after the incident, this does not negate the incriminating evidence that Asaro already possessed. The fact that Asaro did not ask further questions about Gaines's involvement does not negate the probable cause based on the evidence he had already obtained through his investigation.

In sum, the district court's characterization of the surveillance tape and of Gaines's failure to contact police was not error, and Asaro's failure to ask specific questions of the witnesses did not negate probable cause. Accordingly, we AFFIRM the summary judgment for essentially the reasons stated in the court's order dated September 1, 2006.[2]

---

[2] Gaines also claims that the court erred in finding that, even if probable cause was lacking, Asaro is entitled to qualified immunity. Because we decide Gaines's first two claims against him and affirm the court's finding that probable cause existed to arrest Gaines, we do not reach this issue.